**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

FRED WEATHERSPOON                                                                PLAINTIFF

v.                                  Case No. 4:08CV00635 JLH

UNIVERSITY OF ARKANSAS BOARD OF
TRUSTEES; UNIVERSITY OF ARKANSAS
AT PINE BLUFF BOARD OF TRUSTEES;
DR. LAWRENCE A. DAVIS, JR., individually, and
in his official capacity as Chancellor of the
University of Arkansas at Pine Bluff; ELBERT BENNETT,
individually, and in his official capacity as
Vice-Chancellor of the University of Arkansas at Pine Bluff;
B. ALLAN SUGGS, in his official capacity as President
of the University of Arkansas; DRS SERVICES, INC.;
DONNIE RAY SAVAGE, individually, and in his
official capacity at the University of Arkansas at
Pine Bluff; and JOHN DOES 1-3                                            DEFENDANTS

**OPINION AND ORDER**

DRS Services, Inc., and Donnie Ray Savage have moved to dismiss Fred Weatherspoon's

claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Weatherspoon was Chief of Police at the University of Arkansas at Pine Bluff, while Savage was

under contract with UAPB to provide security services at the time of the incident.  Weatherspoon

alleges that Savage violently assaulted and restrained him while Weatherspoon was attempting to

effectuate a lawful arrest.  Weatherspoon claims that Savage violated his constitutional rights

because he was a state actor operating under color of state law; that if DRS and Savage were not

operating under color of law, they are liable for negligently causing Weatherspoon's injuries; that

Savage intentionally caused Weatherspoon severe emotional distress; and that DRS and Savage

breached their contract with UAPB, Weatherspoon being an intended third party beneficiary of the contract.  For the following reasons, the motion to dismiss is granted in part and denied in part.

## I.

In ruling on a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).  A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery."  *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999).  A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 563, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citations omitted).  Stated differently, the plaintiff must "raise a right to relief above a speculative level."  *Schaaf*, 517 F.3d at 549.

## II.

In his complaint, Weatherspoon alleges says that UAPB entered into a contract with DRS Services in 2006 to provide supplemental security services to the campus.  Under the contract, the DRS officers reported directly to Savage and DRS instead of through the police department chain

of command.   At the time, Weatherspoon was employed as the chief of police for UAPB. Weatherspoon alleges that he informed UAPB officials that Savage had a troubling history and propensity to angry outbursts, and he urged UAPB not to contract with DRS.   The complaint alleges that Savage and DRS guards were involved in several instances of disturbing and abusive conduct on UAPB's campus.   Nevertheless, Weatherspoon alleges that UAPB failed to supervise or properly train Savage and other DRS officers.

According to the complaint, on April 18, 2007, Savage initiated a violent physical altercation with one of the UAPB police officers.   Weatherspoon witnessed the altercation and proceeded to arrest Savage.   Savage resisted arrest and caused Weatherspoon severe injuries, including arm and shoulder trauma that required surgery and rehabilitation.   Weatherspoon alleges that the stress of the altercation caused the recurrence of a previous heart condition.   In addition to his physical injuries, Weatherspoon alleges that he suffered severe and persistent emotional distress from the incident.

Weatherspoon then alleges that on April 20, 2007, he exercised his legal duty to file a report with the Arkansas State Police regarding the altercation.   Weatherspoon alleges that he was suspended on April 23, 2007, and terminated on May 1, 2007, in retaliation for filing the report. This lawsuit ensued.

Weatherspoon makes several legal claims for relief against Savage and DRS.   Weatherspoon claims that Savage was a state actor operating under color of law because he and DRS were in a contractual agreement with UAPB.   Therefore, Weatherspoon claims that Savage's assault amounted to excessive force in violation of Weatherspoon's constitutional rights.   Weatherspoon claims that if DRS and Savage were not acting under color of law, then they are liable for negligently causing Weatherspoon's injuries, insofar as Savage breached his duty to provide protection and care to

3

persons on the UAPB campus.  Weatherspoon also says that Savage intentionally caused him severe emotional distress, for which DRS is also liable under *respondeat superior*.  Finally, Weatherspoon claims that he was an intended third party beneficiary of DRS and Savage's contract with UAPB, in which DRS and Savage promised to refrain from conduct unbecoming an officer, to perform all duties in a professional manner, and to adhere to a standard of behavior that reflects credit upon UAPB.  Weatherspoon alleges that Savage breached that contract when he attacked and injured Weatherspoon.

## III.

Weatherspoon makes two state law tort claims against DRS and Savage: one for negligence, and the other for intentional infliction of emotional distress, or the tort of outrage.  The gravamen of both of those claims is based in a claim for battery.  Because Weatherspoon's state tort claims are really based in a claim for battery, which is barred by the applicable statute of limitations, those claims are dismissed.

Arkansas Code Annotated § 16-56-104(2)(A) provides that the statute of limitations on an action for assault and battery is one year from the date of accrual.  Weatherspoon filed a complaint on July 28, 2008, but did not assert claims against Savage or DRS in that complaint.  Weatherspoon amended his complaint to include DRS and Savage on June 12, 2009.  Weatherspoon alleges that the physical altercation between him and Savage occurred on April 18, 2007, which is more than one year before he filed his original complaint and the amended complaint including DRS and Savage as defendants.  Thus, DRS and Savage argue that any tort claims under state law are claims for assault and battery and therefore barred by the statute of limitations.

4

In response, Weatherspoon cites *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998), and *Miller v. Dillard's, Inc.*, 47 F. Supp. 1294 (D. Kan. 1999).  In *McQuay*, the plaintiff brought a claim for the tort of outrage against a doctor for unwanted, improper physical touching of the breasts of his female patients.  The defendant argued that the gist of the claim was battery and that the claim was barred by the one-year statute of limitations.  The Court held that the gist of the plaintiff's claim was for outrage because the trauma suffered was from the abuse of the relationship between doctor and patient rather than physical harm flowing from the contact. *McQuay*, 331 Ark. at 475, 963 S.W.2d at 587-88.  Here, the relationship between Weatherspoon and Savage is not remotely akin to the trusted relationship between a patient and her doctor.  Weatherspoon's trauma has no connection to Savage's status as a private security guard.  He suffered physical injuries in a violent altercation, and those injuries would be the same even if Savage had not been a private security officer.

In *Miller*, an employer department store sought dismissal of a complaint against it for negligent supervision of a security employee who allegedly falsely imprisoned the plaintiffs.  The original complaint alleged only *respondeat superior* liability for false imprisonment, but the amended complaint alleged negligent supervision.  The negligent supervision claim had a two-year limitations period, whereas false imprisonment had only a one-year limitations period.  The Kansas district court held that the suit was in essence a negligence claim against the employer for not supervising and controlling the security officer, rather than a false imprisonment claim based on *respondeat superior* liability.  *Miller*, 47 F. Supp. 2d at 1296-1300.  Here, Weatherspoon asserts a negligent supervision claim against UAPB, as the plaintiff in *Miller* did against the department store;

but his claim against Savage is for intentional conduct, not for negligence, so *Miller* is not on point with respect to the motion to dismiss before the Court.

Although a plaintiff is master of his complaint, courts nevertheless look to the gist of the case when ruling on a motion to dismiss. *See Andrews v. McDougal*, 292 Ark. 590, 731 S. W.2d 779 (1987). In *Andrews*, the plaintiff's mother shot him while he was standing on his front lawn. The plaintiff's attorney advised that he should wait until the mother's divorce was finalized before filing a civil action against her. More than one year later, the plaintiff commenced an action, which was dismissed because it was barred by the statute of limitations for battery. The plaintiff then brought an action against his lawyer for legal malpractice. The lawyer argued that firing a shot onto the land of another was a trespass to real property, which was not barred by the statute of limitations, so the plaintiff was not damaged by the suit's dismissal because he still had a claim against his mother for trespass. The Supreme Court disagreed. The court said, "This argument is ingenious but it will not work. This suit was not against someone for firing a bullet across land, but a suit against someone for shooting another person, which is battery." *Andrews*, 292 Ark. at 591, 731 S.W.2d at 780. The court thus held that the plaintiff's suit against his mother, the gist of which was really a claim for battery, was barred by the one-year limitations period. *Id*.

In *Tollett v. Mashburn*, 183 F. Supp. 120 (W.D. Ark. 1960), the plaintiff alleged that the two defendants, one a police officer, unlawfully interfered with her right to be on the premises where she had been hired to pack and remove office equipment, and they physically attacked and beat her. More than one year later, she filed suit along with her husband, who also claimed to have suffered damages resulting from his wife's attack. The complaint alleged that the attack caused a miscarriage, which resulted in mental anguish to both husband and wife. The district court relied on *Jefferson*

6

*v. Nero*, 225 Ark. 302, 306, 280 S.W.2d 884, 886 (1955), which held that a special relationship between the parties, such as invitee, could turn a simple battery claim into a claim for wrongful or negligent use of excessive force.  The court noted that the basis for the wife's claim was the assault and battery, and that no special relationship existed between her and the defendants.  Thus, the court held that the damages suffered by the wife "all were the result of the assault and battery, and such claims are barred by the one year statute of limitations." *Tollett*, 183 F. Supp. at 125.  The husband's claims also flowed directly from the assault and battery and were thus time-barred.  *Id.*  On appeal, the Eighth Circuit affirmed, noting that the plaintiffs relied on Arkansas cases holding that a malicious and willful interference with contractual rights and relationships of another is an actionable tort distinct from assault and battery.  *Tollett v. Mashburn*, 291 F.2d 80, 92-93 (8th Cir. 1961).  The Eighth Circuit stated: "The allegations here involved force the conclusion that the gist of appellants' case is the alleged assault and battery barred by the one-year statute of limitations and we so hold." *Id*. at 93.

As in *Tollett*, the gist of Weatherspoon's tort claims against DRS and Savage is that Savage harmed Weatherspoon by intentional physical contact, which is the tort of battery.  *See* AMI 418 (2009).  *Miller* is not to the contrary.  In *Miller*, the gravamen of the plaintiff's claim against the employer was negligent supervision.  Here, the gravamen of the tort claims against DRS and Savage is battery.  Weatherspoon cannot avoid the one-year limitations period by characterizing his claim as something other than what it is.  Weatherspoon did not commence the action within one year of the date of the battery.  Therefore, Weatherspoon's tort claims under state law are barred.

## IV.

On Weatherspoon's claim that Savage and DRS violated his constitutional rights, the threshold issue is whether the allegations are sufficient to support the conclusion that Savage and DRS were acting under color of law.  The Eighth Circuit has explained:

> "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Id*. (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id*. at 49-50, 108 S. Ct. at 2255 (citations omitted). We have explained that "[t]he injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible." *Parker v. Boyer*, 93 F.3d 445, 448 (8th Cir.1996) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753-54, 73 L. Ed. 2d 482 (1982)), *cert. denied*, 519 U.S. 1148, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997).

> "It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111, 65 S. Ct. 1031, 1040, 89 L. Ed. 1495 (1945) (plurality opinion). As the First Circuit has said, "[w]hether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.), *cert. denied*, 516 U.S. 987, 116 S. Ct. 515, 133 L. Ed. 2d 423 (1995). Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law. *See id*. at 987; *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir.1996), *cert. denied*, 519 U.S. 1111, 117 S. Ct. 950, 136 L. Ed. 2d 837 (1997); *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3rd Cir.1994); *Pitchell v. Callan*, 13 F.3d 545, 548-49 (2d Cir.1994).

*Roe v. Humke*, 128 F.3d 1213, 1215-16 (8th Cir. 1997).

At the pleading stage, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). The Supreme Court has described the review as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974) (abrogated on other grounds).

According to the complaint, DRS and Savage were acting under color of law because they had contracted with UAPB, a state institution, to provide security services for the campus. The complaint alleges that DRS officers carried handcuffs and pepper spray and wore uniforms and badges, and that Savage was a *de facto* police officer. The complaint also alleges that Savage initiated a violent physical altercation with one of Weatherspoon's officers outside the UAPB Police Station. In Weatherspoon's effort to intervene, Savage assaulted and injured him.

Weatherspoon is required only to give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Weatherspoon has alleged that DRS and Savage contracted with UAPB to provide security for the campus, and the complaint could be construed as alleging that Savage was acting under color of law during the course of the physical altercation in which he injured Weatherspoon. It may be that Weatherspoon's § 1983 claim is unable to survive a motion for summary judgment on the issue of whether Savage was acting under color

of law.  However, under the liberal notice pleading standard of the Federal Rules of Civil Procedure, the Court finds that Weatherspoon has pled facts sufficient to support a § 1983 claim against DRS and Savage.

## V.

The complaint also alleges that Savage and DRS are liable for breach of contract. Weatherspoon alleges that their contract with UAPB required DRS and Savage to refrain from "conduct unbecoming guards," "ensure that all duties are performed in a professional manner," and "adhere to a standard of behavior that reflects credit on [UAPB]."  Weatherspoon alleges that he was an intended third party beneficiary of the contract and can recover for his injuries based on Savage's breach of contract.

Citing to *Perry v. Baptist Health*, 358 Ark. 239, 245-48, 189 S.W.3d 54, 58-60 (2004), DRS and Savage contend that Weatherspoon was not a party to the contract between them and UAPB, nor was he mentioned in the contract as an intended beneficiary, so he lacks standing to assert breach of contract.  DRS and Savage say that a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that the contracting parties intended for there to be a third party beneficiary.  Because Weatherspoon was not an intended third party beneficiary, DRS and Savage conclude that he fails to state a claim for breach of contract.[1]

Weatherspoon contends that DRS, Savage, and UAPB intended to benefit persons on the campus with added protection, and that the defendants' motion requires a finding of fact as to the

---

[1] DRS and Savage cite to a line of cases, including *Tackett v. Merchants Security Patrol*, 73 Ark. App. 358, 364-65, 44 S.W.3d 349, 353-54 (2001), holding that an injured party cannot recover as a third party beneficiary of a contract unless it is apparent that the contracting parties intended to confer a direct benefit upon the plaintiff by protecting him from physical injury. Savage and DRS say that no such direct benefit was extended to Weatherspoon in this case.

parties' intent, which is beyond the scope of a motion to dismiss for failure to state a claim. Weatherspoon says that the intent of the parties to the contract is an issue more appropriately resolved at the summary judgment stage, not now.

The Court agrees with Weatherspoon.  Parties are presumed to be contracting only for themselves, and a contract will not be construed as having been made for the benefit of a third party unless such was the clear intention of the parties.  *Elsner v. Farmers Ins. Group, Inc.*, 364 Ark. 393, 395, 220 S.W.3d 633, 635 (2005).  A contract made for the benefit of a third party is only actionable if there is substantial evidence of clear intention to benefit that third party.  *Id.*  The intent of parties to a contract is a question of fact.  *Keller v. Safeco Ins. Co. of Am.*, 317 Ark. 308, 312, 877 S.W.2d 90, 93 (1994).  At the outset, a court must consider the provisions of the contract in determining whether the parties intended to benefit a third party.  *See Locke v. Ozark City Bd. of Education*, 910 So.2d 1247, 1252-54 (Ala. 2005) (whether parties contracting for security services intended to benefit a third party turned on the specific provisions of the contract); *Johnson v. Robert Bruce McLane Associates, Inc.*, 201 A.D.2d 436, 437, 608 N.Y.S.2d 165 (1994) (whether plaintiff was an intended third-party beneficiary of a contract for security services was a triable issue of fact).

Here, the motion to dismiss asks this Court to conclude that Weatherspoon was not an intended third party beneficiary of UAPB and DRS's security services contract—a contract that the Court has not seen.  Although Weatherspoon might not be named in the contract, he can be an intended third party beneficiary if he is in a class of persons sufficiently described or designated as intended beneficiaries.  *Elsner*, 364 Ark. at 395, 220 S.W.2d at 635.  The complaint could be read as alleging that UAPB and DRS contracted to provide security protection to all persons, or invitees, on the UAPB campus, and that Weatherspoon was in that class of persons.  As with Weatherspoon's

§ 1983 claim, the liberal notice pleading standards require only that the complaint make a short and plain statement sufficient to put DRS and Savage on notice of Weatherspoon's claim for relief. Weatherspoon has done so on his claim for breach of contract.

## CONCLUSION

For the foregoing reasons, DRS and Savage's motion to dismiss is granted in part, and denied in part. The motion to dismiss is GRANTED with respect to Weatherspoon's state law tort claims for negligence and outrage, and those claims are dismissed with prejudice as barred by the statute of limitations for battery. The motion to dismiss is DENIED as to Weatherspoon's constitutional claim for excessive force and his claim for breach of contract. Document #25.

IT IS SO ORDERED this 10th day of November, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE